And we're ready to proceed in the matter of Linda Migliori, Antarctic Corn v. Lehigh County Board of Elections. Councilor Ray? May it please the Court, Ari Savitsky from the American Civil Liberties Union on behalf of the plaintiffs, and I've reserved three minutes for rebuttal. Okay. Undisputed, the plaintiffs are registered and qualified to vote, that their qualifications were verified by the Board of Elections. That the ballots were received before the deadline. We got that. Yes. Okay. So correct your argument. And this Court should do two things with this appeal. First, it should reverse the District Court's erroneous private right of action ruling on this simple basis. Voters can enforce their federally guaranteed right to vote under the materiality provision by suing a federal court under Section 1983, just as Congress intended, and just as these plaintiffs did here. Did the District Court discuss 1983? Excuse me? Did the District Court discuss 1983? The District Court did not discuss 1983. However, the complaint is clear that this is a 1983 action. I understand the argument has been waived, and we'll hear them on that, but let's assume that it's not waived. The District Court didn't discuss 1983, and the District Court didn't apply the Gonzaga framework, which is applicable here because it's the 1983 action. And you argued this in the summary judgment motion? I mean, I think the reason the District Court didn't discuss it, right, is because it was only glancingly discussed in the summary judgment motion, right? Your Honor, I don't read the record that way. If you look, for example, at JA 752, where you see the first response in opposition to summary judgment, our first time that we responded to this argument regarding the private right of action, the initial rule statement, what is the applicable law, says it's Gonzaga. Cites Gonzaga, I think, three times in that rule statement, and says if there is a federal right, then there is a 1983 remedy. Explicitly says in that paragraph, in a 1983 action, this is the remedy, the 1983 remedy. In a 1983 action, there's a presumption of a remedy under 1983 once you've established a federal right. And also, the briefing goes on to cite Schweier and quote Schweier discussing the applicability of 1983, the availability of 1983 remedy to enforce the materiality provision. The District Court, and I thought Schweier was very helpful to you also, but the District Court wasn't that convinced by Schweier because it was, he thought that the court's decision in Sandoval basically abrogated the Seventh Circuit's decision in Schweier. What's your response to that? So, I don't think that's right. I mean, Sandoval was decided prior to Schweier, and what Schweier did was it applied Gonzaga, because Schweier, like this case, is a 1983 case. Schweier applies Allen, and Allen is abrogated by Sandoval, right? So, Your Honor, I don't think that Schweier applies Allen. I think what Schweier does is it points to Allen and to Morse as examples of instances where the court has recognized that you can have parallel public enforcement, public remedies brought by the AG, and also- I want to get your argument, and I think this picks up on what Judge McCleary was asking. There's 1983, and then there's the private right of action that could be implied as a matter of judicial interpretation, right? So, you do need to separate the two, right? And I'm assuming that, as I understood your argument of error in the District Court, was that the District Court didn't do that. The District Court leapt into one, the private right of action, but didn't stay on the 1983 path. So, why don't we stay on the 1983 path for a moment and just- because I understand the test is kind of blur, and that's why Schweiker gives you- you get a sense of that in Schweiker, but what is the 1983 argument, then, that you're saying the District Court missed? So, the 1983 argument is applying Gonzaga, applying Barnstable, which is the Supreme Court's latest decision. The test is, is there an individual right? Did Congress intend for there to be an individual right? Look to the text of the statute, starting with the text of the statute here. The materiality provision describes the right of any individual to vote in any election. The language is very clear. It's, if anything, clearer than the Title VI and Title IX language that the Court pointed to in Gonzaga. And once you determine that you have that statement, mandatory individual right, that there's a federal right, then there is a remedy for that right under 1983. You presume the 1983 remedy applies, and it is the rare case, it's an exceptional case, as the Court said in Blessing, where a 1983 remedy is somehow supplanted. And what the Court said in Barnstable, and this is a unanimous decision authored by Justice Alito, saying that the dividing line between cases where a 1983 action will lie and cases where it's been supplanted is where Congress has authored a more restrictive private remedy scheme. Why doesn't Section C give them the rebuttal they need for the private right of action under 1983? Yes, Your Honor, because 101C is a public remedy scheme. And what the Court said in Rancho Palos Verdes and Barnstable is when we're asking about the 1983 remedy, it is the existence of a more restrictive private remedy that is inconsistent with the more expansive 1983 private remedy. Those are the rare cases where you're not going to be able to enforce your federally guaranteed rights in 1983. A parallel public remedy is not inconsistent with a private remedy. And the Court in Sandoval itself pointed to that in Barnstable. Does the public remedy go to the nature of the individual right as well? Before you answer that, does Blessing survive Gonzaga, and do we need to look at it as a separate set of tests, or is Gonzaga really the framework? I think Blessing provides some additional detail. It's incorporated into Gonzaga, and it applies additional detail about how we look for that individual right. So one of the things that we looked into is sort of the comprehensiveness of the scheme, right? So does the existence of the Attorney General's enforcement action factor into the finding of the individual right? Because I could see an argument that says, well, because you have this comprehensive scheme of systemic voting rights that are then to be vindicated at the discretion of the Attorney General in the United States, that suggests this isn't an individual structure. So what do you think about that? No, I don't think it does, and I think what the Court has said is for the purpose of determining whether there's an individual right, you look to the text of the statute, the nature of the right as it's stated in federal law. Does it talk about the person's benefit? Is it phrased in mandatory terms? Is it concrete? That's the test in Blessing, and it's reiterated in Gonzaga and the other cases. The revenue scheme might be- But Gonzaga also talks about focusing. You have to focus on whether it's the individuals that are being protected or the entity that's being regulated. So I get your argument is this is a protection for individuals because it refers to the individual right to vote, and I assume the argument on the other side is, well, no, it's a regulation of an entity, which is the Commonwealth and the Commonwealth's election apparatus. So how does Gonzaga factor in that balance? Well, again, I think Gonzaga says, are we talking about an individual right, and is it phrased in terms of the person's benefit? Is it phrased in mandatory terms? I do think this statutory language qualifies. I understand that part of the statute says no person acting under color of state law shall, but then it says deny any individual the right to vote in any election. And I do think that language- Where would the right rest if not within the individual? I think you're getting to the point, which is no person under the color of state law shall deny any what. I mean, it has to sort of reference the actor here, so does that create an individual right, or does it just reference the person who's necessarily at issue? So what this court has done in cases like Sabreen and Grammar and in Gonzaga and in Barnstable as well, language like this is held to confer an individual right, and the converse is where you have a statute that talks about regulating solely about what institutions or what federal actors must do and doesn't talk about individuals at all, and an individual comes into court and says you should imply an individual right because of that. But here, and again, the district court said there's a federal right here. The question was about whether- I did not even think your opponents were disputing the fact that there is an individual right. I don't take them to be disputing it very extensively either, and the key point under Gonzaga is that once you have that individual right, there is a strong presumption that it is enforceable under 1983. 1983 guarantees the ability to come to court and vindicate rights guaranteed under federal law, and it is only in very, very rare circumstances, not present here, where Congress has set out a very specific and restrictive private remedy scheme, trying to channel private parties elsewhere that 1983 is not available. Judge Beatty asked you about the Attorney General, and we know that the language is may institutes, right, so it's not mandatory. But as you look at Section D, tell me what we should infer from Section D, particularly the language with regard to exhaustion, right, because clearly the exhaustion language doesn't focus on the Attorney General. So I presume that when you read C and D together, that fortifies your argument about not just the personal right, which everyone seems to agree with, but that there's the implied right as well. That's correct, Your Honor, and that's why even if you didn't apply Gonzaga and if you applied Sandoval and asked what does the statute say about a remedy, the statutory text, the structure, the history, support congressional intent that private individuals come to court. 10101D is absolutely key to that because, first of all, talks about proceeding instituted by a party aggrieved, which is a term of art that refers to private parties, and because it eliminates administrative exhaustion requirements that had barred private individuals from bringing suit, but of course don't apply to the federal government. And that's not the only source textually for congressional intent that there be a private remedy. There's also, in 10101E and G, specific references to actions instituted by the United States or under 10101C, and that's to be contrasted with 10101D's general jurisdictional provision that talks about proceedings instituted under this section. So the more expansive language as contrasted to proceedings instituted by the United States, again, indicates through the text that other parties are also instituting proceedings. And then, of course, we get to the legislative history where Congress says we're supplementing existing law, we're enhancing the protections to the right to vote, to the point where you have the Attorney General of the United States who authored the legislation saying private individuals were attained the right to bring an action in their own name. So I think if you want to go... Historically, in fact, originally, it had been a cause of action seated with the individual, not with government. That was a subsequent add-on, I guess in 57, when they amended the statute to bring in subsection C to allow the Attorney General to bring the action. Correct. Your Honor, for decades, the rights that are now housed in 10101, specifically in A1, were enforced by private individuals. And 1957 was an innovation meant to further protect the right to vote by adding a parallel Attorney General enforcement power. Let me ask you a practical question. So if 10101 was interpreted as your adversary interprets it, I take it then that it could only be used in the rare exercise of discretion of the Attorney General, and all of the writing that could be interpreted for an implied right of action or otherwise to be exercised by an individual would really be superfluous. It's only the Attorney General in his or her discretion may institute. I'm a little confused that the language would only work, although clearly encompassing a private right, would only work with the exercise of the Attorney General's discretion. How are we supposed to reconcile that? How should we be thinking about that? So I think the statute sets forth a power of the Attorney General to seek a remedy, and I think the statute clearly indicates, first of all, it sets forth an individual right that has been enforceable in 1983 and continues to be enforceable in 1983, and I think Congress evidenced its intent that private individuals would enforce this statute as well. And conversely, if you were to say that individuals can't enforce under the logic that defendants are putting forward, individuals would be unable to enforce any of the substantive provisions in 10101. If 10101C actually supplanted any ability of a private individual to bring an action under 1983 or otherwise under the statute, it wouldn't just apply the materiality provision. Their logic says that 10101C displaces everything. That's not right. It's certainly not right, and this is why the clearest and cleanest way to resolve this private right of action issue is that Benghazi text because that presumption is very powerful and we don't have a more restrictive private remedy here. But no matter how you look at it, it's not consistent with the statutory text, which indicates that private individuals can sue, and it's not consistent with the legislative history, which is pellucid with respect to Congress's intent that individuals would retain their right. Maybe that person, if I've ever heard you use that word, was Ed Becker, pellucid. Sounds like I'm in good company or something. You're saying that as a Jersey thing. We've heard of it. Let me just focus your attention on something a little different for a moment. Is there any circumstance in which you would concede that the date is material to a voter's qualifications? I think that under the scheme that we have here, under state law as it is, it is not material to a voter's qualifications. What we do is we look to... I know that's your answer. I said, is there any circumstance in which you would concede that it's material? It's difficult for me to think of a different set of state laws under which... Certainly under this set of state laws, your answer would be no. Correct. And then the Pennsylvania Supreme Court adjudication of the statute, your answer would be no. Under the canvas and votes, where the plurality of the decision was the decision of the Pennsylvania Supreme Court, concluded that was material. Or immaterial, actually. The actual date, where there's no dispute about when the ballots were received, it becomes an immaterial consideration because it doesn't go to qualifications or fraud or anything like that. I think that's right, what the opinion, answer, and the judgment indicated. I don't think it resolved the federal law question. I mean, the question before the court there was sort of, what does shall mean? Is shall mandatory? But I do think it's absolutely right that the opinion, answer, and the judgment and Justice Weck, there's four members of the court, indicated if shall really means shall and voters can really be disenfranchised for failing to write that date on the outer mail ballot envelope, that is potentially a serious problem under federal law. And that's why Justice Weck said the legislature should review the statute to ensure compliance with federal law. And just to get to the merits, I mean, what you should be getting, that was my question I was going to ask. You're reading my mind. You're very elusive. Should we get to the merits? Because the only issue here is whether or not it's a private right of action. The district court didn't decide the merits of materiality. You're right, you should absolutely get to the merits. We have an election hanging in the balance. This court ordered expedited briefing, expedited argument, and the issues remaining in the case, the merits issues are entirely legal. The facts are undisputed. And so this is the precise case in which this court should reach the merits issues, resolve them so that the election can be concluded and certified. And I would add certified with every valid vote counted. Well, then answer the hypothetical that you were going to pose, which is you said before I redirected you that you didn't think there was a circumstance in which you thought the date could be material, but you really didn't spend much of your thought time on it. Is there a circumstance in which you think the date could be material? It is, again, under this. Yeah, yeah. Under the scheme, no, I get it. But I'm just trying to spin it out. I mean, again, I think the difficulty here is that the board has already verified voters' qualifications to vote. And nothing about that date tells us whether they're 18 as of election day, whether they reside in the county, whether they're a citizen, tells us about their felony status. Nothing about the content of that date relates to or bears upon their qualifications to vote. And it is difficult, and so that's why you have a case like Martin where voters are asked to put their birth year, to write their birth year on the outer envelope, and the court says that's not material. That's, I think, if anything, slightly closer in the sense that a birth year maybe could go to age, but even there, you would assume... It does go to age, doesn't it? Right. However, there, the court, as in this case, or rather the county in that case had already verified voters' ages, had already determined their ages. And this is actually an easier case in the sense that the date of the signature has no bearing on age, county of residence, citizenship status. And it has no bearing on timeliness either because the only question is, is the ballot received by 8 p.m. on election day? And timeliness is determined by when the board receives it. The board stamps it, puts it into the sure system. So, and indeed, the date here is so immaterial that the board in this election counted dates that were wrong, that were decades off. The county clerk said, we would count dates from the future because the content of the date doesn't matter. That's the point. We know, and that makes perfect sense because a voter can vote under state laws any time between when they receive the ballot within the weeks before election day and election day itself, they can sign. If they have signed the mail ballot, we know they've done it. And they signed within the window. It certainly doesn't bear on their qualification. It doesn't bear on timeliness. And therefore, a paperwork error in forgetting to write that date shouldn't lead, cannot under federal law lead, to a voter being disenfranchised. Thank you. Yeah, thank you. I know, counsel, I know for the motion you're concerned about being afforded enough time to make your arguments. I hope you'll understand the way the order was worded that we're not particularly concerned with the red light. Hopefully, you'll not abuse that in the span of time, but this court has a tradition of not assassinating anybody when the red light comes on. Thank you. May it please the court, Noah Bocatendel for the United States. I'd like to just address a couple of the questions that were asked to the plaintiff's attorney, but I'm also happy to answer any questions that the court may have. First, on the 1983 issue, we agree with the plaintiff that the line that was set in Rancho Palos Verdes and in Fitzgerald is whether there is a more restrictive private enforcement regime available. And to Jochenke's question about what subsection C does there, in blessing, the Supreme Court dealt with an argument that the Secretary of Health and Human Services would have authority to sue for specific performance of contracts for child support services under Title IV-D of the Social Security Act, and the court said that even if the Secretary had authority to sue, that would not be enough to preclude Section 1983 remedies for private plaintiffs. And there are similar cases dealing with the Help America Vote Act, for instance. The Sixth Circuit, which is the one that the defendants have brought up in dealing with this statute, four years after the McKay decision in Sandusky County Democratic Party versus Blackwell, held that the Help America Vote Act does allow for Section 1983 remedies, even though there is an attorney general enforcement provision there. The First Circuit said the same thing in the Colon-Morero case that we cite in our brief. And then, of course, there are the Allen and Morse decisions from the Supreme Court that found an implied right of action, not even looking at Section 1983, for violations of certain sections of the Voting Rights Act, even though there is attorney general enforcement there as well. And this gets to, as well, a point that Judge Greenway brought up about only leaving this in the discretion of the attorney general. Even if the attorney general were to move as aggressively as possible in dealing with these cases, the Department of Justice doesn't have the resources and often doesn't have the on-the-ground knowledge. Particularly in 1957. Certainly in 1957, when the internet was not even a twinkle in anyone's eye. I think Al Gore was thinking about it. I think Al Gore may have been a child at the time. I don't know his exact age, but I don't know if he was thinking about it. But certainly the Department of Justice wouldn't have had the knowledge about particularly individual denials of the right to vote of specific voters, as opposed to more programmatic violations by states. So I think it's important, particularly given the history that this statute had already been enforced for almost 90 years solely by private parties under Section 1983. And, in fact, many Section 1983 actions, if not the majority of them, prior to Monroe v. Tate in 1961, which expanded the reach of 1983, were voting cases and were often cases for damages. Smith v. Allwright, Terry v. Adams, the white primary cases, were all private Section 1983 cases, and they were, in fact, Section 101 cases under the original provision of this statute. One other thing that I would note on the Attorney General enforcement provision is there's an important bit of statutory history here. The Attorney General had requested that Congress add this enforcement provision to allow the Attorney General to sue either in the name of the United States or on behalf of the aggrieved person for essentially any remedy, including damages. And in a 1956 bill that passed the House, that is what was included. So the Attorney General could sue on behalf of the party aggrieved for both preventative remedies and damages, which, again, damages had been the traditional 1983 remedy at the time since qualified immunity had not been read into the statute yet. But in 1957, Congress restricted the Attorney General's enforcement authority. So it eliminated the ability to sue sort of on behalf of the person benefited, only allowed the Attorney General to sue in the name of the United States or for the United States, and only for preventative relief, not for damages. So we think that's another reason, and that... That's subsection C, you said? That's subsection C, yes. So we think that that history, particularly along with the textual provisions that the plaintiffs pointed out, subsection D, E, and G, all support the idea that the Attorney General's enforcement provision we don't think would be enough even to preclude a private implied right of action, much less meet that difficult burden that the defendants have to meet to show that Section 1983 is not available. On the merits on this case, you know, we do not take a ultimate position on the ultimate merits of this case. We simply ask this Court to reject some of the atextual restrictions on the statute scope that the defendants have asked this Court to read in to the materiality provision, that it's limited to race discrimination, even though the text of the statute says absolutely nothing about discrimination of any sort, or that it is limited to registrations, even though the statute says registration, application, or other act requisite to voting. And for the reasons that we stated in our brief, we think that those arguments are incorrect. In terms of Judge Greenaway's question about how we would apply this, whether there are any particular situations where something might be material, again, because we haven't taken a position on the ultimate merits here, we don't have a specific answer on that, but I would say that in terms of how we think the analysis should work, we think that there's two steps. First, the Court should determine what qualifications a particular requirement is designed to enforce or to measure, and the state can put those forward. The defendants here certainly put forward some qualifications that they say this dating requirement measures, and then once the Court determines from the text of the underlying requirement what qualifications it's measuring, whether those be qualifications to be eligible to vote in the first place, or qualifications to cast a ballot or have it counted, all of which are covered by the statutory definition of vote, then at the second step, the Court should determine whether an error or omission in meeting that requirement is material to determining whether voters have met that underlying qualification, and that can either be on a global level if there is a facial attack on the statute, which is not at issue here, or as is at issue here, looking at the specific context of the specific voters who are at issue, and that's how we think that the analysis should go forward. Thank you. Thank you. Mr. Boyer. Thank you, Your Honors, and may it please the Court, Jacob Boyer on behalf of the Commonwealth. I am prepared to answer any questions the Court may have, but I would like to focus my time answering your question, Judge Greenaway, about are there circumstances under which the date might be material. What to do with so-called undated ballots has been litigated now, quite specifically in state courts in 2020 and now in federal court, and in those various litigation, no one has articulated a purpose that the date serves that's both consistent with Pennsylvania law and relevant to the analysis performed under Section 10101, and I'd like to walk through some of the hypotheses that have been offered for what the date might do and explain why they're either inconsistent with Pennsylvania law or not relevant to the analysis under the federal statute. May I pose a hypothetical, and maybe that'll help us in this journey that you're going to take us on? So a couple of thoughts, right? So we're assuming an election date here of November 2nd. Is that right? Okay. So a ballot is dated the 4th, right? November 4th, right? It comes in October 31, goes through the process. It's bar-coded, state-stamped, whatever. It's valid. Now, is the fact that it reflects November 4th of... Will it affect it being counted? It's of no consequence, I presume, but I don't know that. You're exactly right, Your Honor. So the only date that matters is the date that the ballot is received, which is 8 p.m. by the day of the election. And counties don't judge that based on the date reflected on the outpost. They assess that based on when they actually received the ballot. So let's flip it then, okay? The date is October 31, okay? But it's received at 8.01 p.m. on November 2nd. Is it counted? Under the election code, it would not be, Your Honor. Ballots must be received by 8 p.m. under election day, barring some other court order that might extend the date. But under the election code, any ballot received sometime after 8 p.m. on election day will not be counted. And again, that is not assessed based on the date on the envelope, but when the county actually received either the absentee or the mail-in ballot. What purpose does the date on the envelope serve? Clearly, they have to know when the ballot is received. That's not in dispute here. But I'm at a loss, especially since it was mentioned earlier, I think by Mr. Savitsky, we have some ballots that are dated in the future, kind of a Rod Sterling kind of ballot. And they were... I can't imagine what purpose the date serves. And as I was reading the briefs, I was thinking of a situation, two situations. One, the leap year situation where the person simply puts the wrong year in. This would have to be if it were more toward the end of the year, in January, the date where the election was then. And forgetting it's a leap year puts down the wrong year. Or it flows out at midnight and puts down the wrong day because the clock has changed. Or if the time has turned back, when we change time. There's so many things that can factor into that. And then there are two different dates. One is the inside envelope and the ballot envelope, I'll call it, and the outside envelope has another day on it. So what if the person fills out the ballot on Monday, stuffs it in the inside envelope, but doesn't put it in the outside envelope until Tuesday? So there are two different dates, but it's received in time. I just can't imagine, other than someone thought it would be a good idea to put date on the outside envelope, I can't figure out what purpose it serves. I agree. I do want to correct you. There is only one date. The envelope is not dated. There are no markings on that envelope. But I think your honor is exactly right. No party has been able to articulate a purpose that the date serves that's consistent with Pennsylvania law and relevant under the federal statute. I do want to spend a bit of time, if I may, on the Pennsylvania Supreme Court's decision from 2020, which has drawn much of the attention about what date, or excuse me, what purpose the date may or may not serve. And I'd like to just offer a few caveats about my discussion of that. Number one, the court quite specifically was not addressing the federal question. Justice Wecht, in his concurring opinion, was very explicit. The issue had not been briefed. It was not before the court. And the court was not opining on whether disqualifying ballots for parent-included date would violate the materiality provision. The second point is that, although much of the attention is focused on Justice Docherty's dissent, which I will get to in a moment, there were three justices, and indeed the order of the court was that the three justices who explained why the date does not serve any function of Pennsylvania law, and indeed the order of the court was ultimately that undated ballots would be counted. And that is the only presidential order that any Pennsylvania court has issued under state law about what to do with undated ballots. Justice Docherty, in a dissenting opinion, did offer some hypothetical purposes that the date might serve. He gave three or perhaps four in one paragraph of his dissent. It is important to note that dissenting opinions do not actually cite any provision of Pennsylvania law or any part of the Pennsylvania Code. It referred back to a Commonwealth Court decision adopting some of its rationale. That Commonwealth Court decision also did not cite or ground its analysis in Pennsylvania law. The rationale that Justice Docherty offered for what the date might serve are, one, that it might confirm someone who has, who shows up on the polling place having already cast a ballot, the date might be used to determine which method they actually intended to vote by, whether it was in person or whether it was by mail. Anyone who has requested an absentee or mail-in ballot may not vote on Election Day after the polling place unless they surrender both their absentee ballot and their mailing envelope. There are only options to vote provisionally. If they do so, the mail-in ballot will be counted irrespective of its time, excuse me, irrespective of which was cast first so long as the mail-in ballot was received by Election Day. The second hypothetical, excuse me, second scenario that Justice Docherty hypothesized was that it would be relevant to determining whether someone meets the eligibility criteria. It would perhaps provide a date against which to measure if a person is indeed qualified. The error there is that Pennsylvania law requires anyone who votes to be eligible as of Election Day. So if you are determining someone's eligibility based on their qualifications or their circumstances in October, for example, you're not using the right date to determine their eligibility. Number three is our timeliness, which we've now discussed so I don't need to rehash. And number four was that it's a guard against fraud. This is the rationale of the district court about the constitutional analysis, which is a slightly different analysis here. But that too is not right because the only date that matters is the date the ballot is received. It must be 8 p.m. by Election Day and the counties independently verify that independent of the date on the ballot. Can you help me? Really, I've gone through a lot of scenarios trying to figure out how fraud can come into this. Is there a hypothetical scenario where the date could be used for some fraudulent purpose? Because it seems to me if I'm understanding the system that if the barcode has to be going to something, some machine so that it's counted or not counted, you know, that's matched against whatever other information the state has and the state either says okay or the state doesn't. The date, right, we've been through, I don't want to go through the things that we've been through, but the date would seem to not say anything or give any information or provide any information from which one could infer fraud. So I'm kind of at a loss. I think you're exactly right. I don't think, Pennsylvania has many important anti-fraud protections and the date is not one of them. Because the only date that matters is the date the ballot is received and because in all cases the county independently determines that without respect to what's on the ballot, the date itself is not a tool of anti-fraud. I'm looking at just the faculties incurring dissenting opinion now and I didn't focus on it that much when I initially read it because it's not part of the majority opinion. But even his examples where the date might be material don't make much sense because the controlling factor is going to be when was the ballot received and entered into the short system. That's exactly right. I think the other examples he offers for the reasons I have laid out are inconsistent with Pennsylvania law. I'd like to finish, if I may, addressing some hypotheticals that Mr. Ritter had offered for what the date might do. And the important point, and this is true for all the hypotheticals that Mr. Ritter has offered, is that none of them is actually suggesting a scenario in which the date is material to eligibility. They're all suggesting a scenario in which a voter that everyone agrees is ineligible for reasons that have nothing to do with the date. For example, a voter who received an absentee ballot at the beginning of October left Pennsylvania before Election Day having already submitted their absentee ballot. That voter is ineligible to vote because as of Election Day they do not meet the criteria. The relevance that Mr. Ritter has hypothesized is that voter who all agree is ineligible may also have committed a violation of section 25 PS 3553 which prohibits false declarations when you say on your declaration I am who I say I am and I'm eligible to vote. So he has not offered a use for the date that actually is relevant to the analysis this court must perform under section 101. Thank you, Your Honors. This is the boss, is that correct? Yes, Your Honor. May it please the court, my name is Joshua Voss and I represent intervener appellee David Ritter. Of course, as Your Honors know this case is not about a violation of state law that issue was resolved by the Commonwealth Court and the Supreme Court declined review. This case is also not about a violation of the U.S. Constitution. Plaintiffs presented that to the District Court. District Court disagreed. That was not appealed to this court per footnote three in the opening brief. Since you referred to the District Court maybe we can start with this. Would you agree that the District Court would you agree with the District Court that while there is a personal right here there's no private remedy? You'd agree with that proposition, I presume. We certainly agree with the court's Sandoval analysis, yes, Your Honor. All right, so let me ask you this question. If all the ballots are timely submitted how would a voter fraud involving the date on the outside of the ballot be accomplished? We were just chatting about that. So help me understand the fraud part of this. Sure, and let me see if I can sort of bring it home some of these questions. So I brought an envelope in with me. This is in the record, of course. It's key to note that the date is part of an attestation. It's not I completed the ballot this date. It's you're attesting these things are true. The fraud components can come in in a couple of ways. One, we've heard you scan it in the system. That's how we know it was received. It's foolproof. The election operators will never make a mistake. I'm not sure anyone's arguing that anything is foolproof. I think maybe for the purposes of your argument you're engaging in some hyperbole. I'm not sure I'd be willing to say that they are arguing that it's absolutely 100% foolproof and no one being involved in the system would ever make a mistake. In the face of it, that's not a tenable argument. I agree, Your Honor. And that sort of proves my point. This date, among other things, is effectively part of a two-factor authentication. What if you get a set of ballots that get in the room on election day and you're going through them? Oh my gosh, we've got a basket that weren't scanned in. What's our best indicia of these being timely cast and timely received? Well, this is a different way. Well, I don't understand the two-factor notion. Because if I've understood what's been said here today and you might disagree, if the ballot is dated November 10th but it's scanned in on November 1st, you would agree with the proposition that that is a ballot that should be counted, yeah? I do agree, Your Honor. OK, so then tell me if I don't understand the two-factor authentication. In my hypothetical, it's a scenario where the ballot wasn't scanned in and we're looking for an indicia of timely received. But when can we assume, in the case that we have before us, that the ballot's not going to be scanned in? I thought that that's an assumption one makes in this scenario ab initio. Am I wrong? In this case, there's no question that the ballots were timely scanned in. Well, OK. So if we're assuming that the ballot is timely scanned in, now help me as to how the date could be relevant material. Sure. Again, I want to emphasize it's part of a declaration. Let me see if I can't bring it home on that frog point. There's a provision that allows prosecution for false declaration on absentee ballots. It was decided by the Attorney General. And they said, well, what if you moved out of state? We know you moved out of state, so you aren't qualified because you moved out of state. What if someone was willfully trying to cast a bad ballot before they left? Most assuredly, the date on which they attested, I am qualified to cast this, is going to be material in the further prosecution at the back end to determine whether they lied. The date will tell us something factual about when they declared, I can vote this. Even if they're living in Canada and trying to vote in Pennsylvania, we know. But is something factual enough, counsel? I mean, I took Judge Greenaway's question and be saying, how is this material? I mean, OK, maybe there's some outer level relevance, but is that really what material means? If you will indulge me, perhaps I can pay this off in something of a long-winded way. If you just bear with me, I can imagine one being long-winded, conceding to the fact that he's being long-winded. Remember the barbershop? Know your limitations. All right. So as quickly as I can. Interestingly here, one material term is absolutely defined in the statute, and that is the word vote. And what I think we keep hearing is qualified to vote should only be looked at the registration requirements. 18 US citizens not currently incarcerated for a felony. But that is not what Congress tells us vote means. So if we look at the definition, vote includes all action necessary to make a vote effective, including- Looking at 101 now? 101E, which is incorporated into this section. Make your vote effective, including but not limited to. Including but not limited to registration or other act required by state law prerequisite to voting, comma, casting a ballot, comma, and having such ballot counted and included. So in other words, to be qualified under state law, we most assuredly look at whether you're qualified to be registered. 18 US citizen, resident of the Commonwealth for 30 days. But to be qualified, you- How does that figure in with the materiality provision? And why is the date material? I'm not getting it. I said it was long-winded. I'm maybe 30 seconds more winded, and I'll get there. So if you agree that qualified vote means more than just registration, and it also means acts requisite to casting a ballot and having such ballot counted under Pennsylvania law, we can turn to Pennsylvania law and learn how this is material. And it's revealed in 25 PS 3146.8G, as in George, 3. That provision of the law is called canvassing of official absentee ballots and mail-in ballots. And what it instructs, what the Pennsylvania Supreme Court has said about that provision, is it imposes three duties on a board of elections in deciding whether a mail-in ballot can be counted, which, again, is part of the definition of vote. And two of the duties are immaterial here. The one that matters is the board must be, quote, satisfied that the declaration is sufficient. Satisfied that the declaration is sufficient. The court interpreted that, Pennsylvania Supreme Court, in a case called NRA November 3, 2020 general election, which is not the NRA canvass case. It's similar in time, similar name, different case. And the court declared, as a matter of Pennsylvania law, a board must examine the sufficiency, and that requires them to make sure it is complete. In other words, as a matter of- It's talking in terms of sufficient, not material. But the problem here, though, is that even ballots envelopes that were dated in the future would be, quote, sufficient, close quote, even though it's totally immaterial if it was received in time. Your Honor, we actually reject that proposition. That was guidance given by the Department of State. It's never been tested in a Pennsylvania state court to see whether that's correct. I'll actually direct the court- But it is conceded here that a wrong date, forget future, a wrong date that has not yet come would be sufficient under the state statute. But it wouldn't be immaterial if it's received in time. I think that's, frankly, an unresolved question under Pennsylvania law. And I will note, for the record, at JA 189, there's an instruction card that Lehigh sent to every mail-in voter, an instruction to put today's date on your declaration. So this notion that you can put the wrong date or your birthday, that's never been tested under Pennsylvania law. And because the materiality provision incorporates Pennsylvania state law, I'm not sure that we can- I'm so sorry. I just thought you conceded this before. I mean, we talked about when a vote would be counted, right? And if the date is incorrect, it's scanned in in a time before November 2nd at 8 PM, it would be counted. Is that not correct? I apologize, Your Honor. I believe it would be counted because that's the instruction the Department of State has given. I'm not sure if that guidance is legally correct and whether it should as a matter of statutory practice be counted. Well, that's not a question we have before us, right? Correct. Correct. OK. Then maybe you don't need to talk about it? I agree. But what we do need to talk about is, what is material to be qualified to vote? Vote being a statutory term that includes being elements requisite to casting a ballot. Here's where you need to help us. This brings me back to Judge Mady's question, right? He was, I think, suggesting that maybe we are conflating materiality with relevance rather than materiality pursuant to the statute, right? I think I was suggesting that. Say it again. I think I was suggesting that. Yes. Yes. Thank you. OK. So I got him right. No. No. That's a good question. I'm not sure. The question before me, I'll say it this way. This is how I understand it. Materiality can't be relevant. Well, couldn't something be sufficient but not material? Couldn't something be material but not sufficient? I mean, I understand what the test lady is saying. Make sure it's sufficient. Well, isn't that potentially a different quantum of relevance than materiality is? It could be, but as I understand the statute, it says look to state law. This is a federal law, federal prohibition. Well, look to state law to give it volume or importance or what have you. And Pennsylvania state law says declaration must be complete to have your mail-in ballot counted. What does complete mean? Complete means fill that all the way. Accurately? Accurately is an unresolved question, but I would submit that that is what is intended by the statute where that case, where I argue in that case in state court, I would recommend. I make a good faith mistake in the day, the year even, that would be sufficient even though it would be totally inaccurate. I think if Pennsylvania law simply requires it to be filled out with any characters and letters, then it would be sufficient. I'm not sure that's the full thrust of the law. Again, it's unresolved. But at a bare minimum, the law has to be filled out completely. Let me ask you this question. In your papers, you seem to be focused on the notion that 101C provides exclusive authority to the attorney general. And I wondered if you could talk to us about how you can reconcile that with D, in which there's a reference to exhaustion of administrative remedies, which would seem to imply that private parties would have to exhaust. Your position would seem to be inconsistent with the language of D, but maybe you can help us resolve that. And the way you're helping us resolve that, unless I missed it and I did one of these Control-F searches, which is pretty thorough, I don't think the district court even mentioned subsection D or 1983. And what do we do about that? But answer this question first. Yes. So I thought I heard the United States Council suggest that agreed parties at the time were voters at the time of the statutory enactment. And as I interpret paragraph D for what it's worth column, I think the agreed parties are the voters. And the suggestion in D is that the United States government certainly doesn't have to wait for the voters to go through any state court process like we did in this case under the election code. So I think that's how it can be reconciled to make the district court. I'm not quite sure it's that simple, right? It doesn't make any sense, even, because the agreed party, if the agreed party hasn't brought any action, they wouldn't have to exhaust. If you're saying agreed, their exhaustion means the attorney general can come into court without waiting for the actual voter to exhaust administrative remedies. Even there, that would mean that the individual voter would have some kind of access to court to bring an action. But they wouldn't have to exhaust remedies to bring bad actions. I'm not sure if that helps you. It talks about exhausting remedies. It's not clear to me that when it says by law, it's referring to this federal statute. There may well be state administrative remedies for the agreed voters to pursue. But that doesn't help you. Yeah, it wouldn't matter, right? Right. It wouldn't matter. Whether it's state administrative remedies, I'm sorry, whether it's state exhaustion or federal exhaustion, I'm not sure that that dichotomy is presented. But just to continue with what you've said, wouldn't matter, right? Because what the language would seem to imply is it's contemplating private rights other than the attorney general. And so in order to have the interpretation of C&D that you propose, you have to help us reconcile this language. I think the best I can offer, Your Honor, is what I've offered there is the suggestion that the voter, the United States isn't necessarily impacted by the consequences of this. It would be the individual voter. So I think the suggestion there is to make clear that the United States doesn't have to wait for the person agreed, the individual voter, to pursue remedies under state law. Could you turn to Judge McKee's 1983 question? You won't find 1983 in the opinion, Your Honor, because frankly, we were surprised to learn it was intended to be front and center in the argument we cited in our brief. And I think Lehigh County is going to cover this more. It was in the complaint. It was referenced in the briefing. Where would the surprise come from? Well, we found Gonzaga cited on one page in response to our brief that the analysis to us and seemingly the district court was seemingly under Sandoval. I think it's understandable why the court missed the admittedly different test between Sandoval and Gonzaga. They're, of course, manifestly different analysis. Let's take up the 1983 for a moment, because you've obviously made your position that you agree with the Sandoval analysis. What about the 1983 analysis? Because it is different, and it is a different set of factors. So why, even if the court was right that there's no implied right of action, why does 1983 not stand as a separate and suitable remedy? So I'm past my time. I trust I have the court's indulgence. Right. So on that front, look, to suggest that there's not rights-creating language here is following, I think, under the Wisniewski opinion from this court from 2007. It can be framed in terms of what the Act R has prohibited to do in someone's rights or declaring someone's rights. So is there a rights-creating language here? Yes. And then, conceivably, you go right to a private right presuming it's not rebutted by congressional intent to foreclose that. And that was the thrust of our argument and our papers to this court, as we suggested. Help me understand. Where is the rebuttal? If we agree that there is a right conferred under the materiality provision, therefore, there is a presumption of a remedy for that right in 1983. How do you rebut that presumption? Is it solely what's provided for in subsection C? Or is there something else that rebutts it? You'd have to look to the statute itself. So insofar as section C creates, allows the attorney general to pursue suit. The test is we have to show that Congress intended in the statute itself to foreclose, essentially, resort to 1983. But section C is very different than the scheme we had in Wisniewski and all those cases which lay out a very specific and almost field preemption. I don't want to term preemption, but almost usurp the field of enforcement, as is true with Wisniewski. Here we simply have the fact that, in addition to the historical individual's right to bring the action, historically, the individual had the right to sue to enforce the right under 10101. Now the attorney general is being given the right to sue. But if we look at the extent of the ambiguity there, and we can look at the legislative history, it's clear that the attorney general's motivation was to supplement, not displace, the pre-existing right of the individuals to sue for a breach of the right to vote. So how is that presumption provided? If anything, it's enhanced, it seems to me, if we looked at the structure and history of the statute. A few small points on that. First of all, the materiality provision was added in 1964, so whatever history of enforcement up to that point, under section what is now A1, doesn't necessarily tell us whether the newly created right, which is the materiality provision, is enforceable privately, notwithstanding the prior history. Frankly, this case, in my mind, presents a good example why this should be exclusively enforced by the attorney general. For instance, in the statute, you'll see that the attorney general can bring in the state of the defendant. The attorney general, we can get three judge panels, direct appeal to the US Supreme Court. So there's a series of enhanced rights that the attorney general gets, the private parties don't get. But what about Dr. Bocott-Lindahl's argument that the attorney general could not possibly be the sole enforcer of these rights? They don't have the manpower to do it, especially now. Just look at what is happening now, and I'm not commenting at all on the validity of any of the legislative documents going out around the country. But they are voluminous. How would the single attorney general possibly be able to go into court in all of those various jurisdictions, states and counties, to enforce the right if we displace the right on the part of the individual to do it? Your Honor, I think that's, as simply as I can put it, probably an issue for Congress. More staff, more budget, et cetera, policy choice. In 1957 and 1964, the dates that we're talking about, you're suggesting that the Congress was contemplating that the attorney general could be all over the 13 southern states? Your Honor, I guess I would respond this way. In 1957, there was no Civil Rights Division. I represent a private citizen trying to get on the bench. And because of the way that this has been enforced, a private citizen is trying to stand up an act of the General Assembly. And in some sense, we're sort of an ersatz defendant. Had it been pursued by the attorney general under the statute, they could bring in the state. Then we would have the state responding. What does the statute mean? What does it intend? So I think this case may be, perhaps, as an example of our rights, it's better and properly enforced by the attorney general as an action against the state. So you don't have private citizens, as Mr. Ritter is, attempting to enforce an entire provision of the Pennsylvania Election Code. With that, Your Honors, I appreciate your time. We ask that you affirm the district court. Thank you. Mr. Mazin or Mazin? Mazin, Your Honor. Mazin? Good morning, Your Honors. May it please the court, Joshua Mazin for the Lehigh County Board of Elections. Your Honors, I really just wanted to focus on the waiver issue. Appellants, your primary argument. Can I ask you a question? Sure. Is there any part of the Ritter argument that you don't embrace? Toward the fight and conquer. No, I would say our other arguments substantially overlap. So I was just going to really focus. So that's why I asked you the question. What is it that you do not embrace? I would say we embrace all of it. I was going to just highlight the waiver issue. OK. The appellants now primarily assert the district court erred when it did not consider their private cause of action under section 1983 and Gonzaga v. Doe, that framework. The board submits that appellants waived this argument because they did not adequately develop it before the trial judge and therefore deprived the trial judge of an opportunity to address it. So let me ask you this question. It's in the headers of the complaint. It's briefed in their opposition papers. Both you and intervener Ritter briefed it in your summary judgment papers. Now, why would we be talking about forfeiture? We're talking about actually forfeiture instead of waiver? Waiver. Under our Barna decision, is it waiver and not false accusation? I believe it's waiver. All right. So let's assume for the purpose of this discussion that it's waiver and not forfeiture. Would that kind of notice, how is it that it would be waived? Well, I just, Your Honor, respectfully do not feel that it was sufficiently developed to put the trial judge on notice, that that was the basis for asserting a private cause of action. But it was put. It was in the complaint. And 19AC doesn't contain the substantive rights. So if you're pleading, my substantive rights have been violated under X statute. And I have the right to pursue a remedy under Y statute, Y equaling 1983. Why isn't that all they have to do? Well, I mean, I would just say, in their brief before this court, they devote five pages to explaining why 1983 in Gonzaga is the correct framework to determine if a private cause of action exists. And below, before the trial judge, it was really just mentioned in passing. My guess is they were probably as befuddled when they read the district court's opinion as I was. And they may well not have seen any need to further elaborate it, because they already said, like I said, our complaint. So why spend a lot of time arguing what is obvious to the universe, that we're pursuing a private remedy that is given to us under 1983, even though the substantive right is not there? Well, one point I'd like to raise, Your Honor, in their emergency motion seeking an injunction pending an appeal to this court, there was no argument concerning that a private cause of action existed under 1983. They focused on 10101 and Sandoval. So in the prong of, are they likely to succeed on the merits, if appellants really felt that section 1983 was the basis for the cause of action, why would they have been silent on it in seeking an injunction? Let's suppose you're right on the edge. All right. Let's suppose we thought it could have been better developed before the district court. What would you cite that's going to say the balance should tip in favor of waiver in this action? I'm not sure I understand. OK. It's not as if they've never raised this. It's not as if it's not a complaint. It's not as if it was never briefed. It's not as if the cases weren't mentioned. So there's something there, right? What is your best argument, then, for why something isn't enough? Well, I mean, I just, having read all the papers, I just don't think it was sufficient to mention it in a cursory kind of passing way. If this was the thrust of their argument. You say cursory passing, but it's in the complaint. If it were a footnote in the brief, maybe. But it's in the complaint. You never filed a 12B6 motion. Well, I think the parties agreed to resolve this on cross motions for summary judgment. And I think, again, if you contrast the appellant's brief now, which devotes the first five pages of the substantive argument to why private cause of action exists under 1983 with the briefing that they did below, where you have it just mentioned in passing, I think that highlights the fact that. What did you have them do in their complaint? Well, I think when you're arguing waiver, it's like, hey, there's nothing here. And if it's in the complaint and then it was subsequently briefed, however cursorily as you would argue, how do we get to waiver? Again, I think, Your Honor, what was before the district court was cross motions for summary judgment, which were substantially briefed. And within that briefing, this issue was just not developed enough to put the trial court on notice that this was the basis for their private cause of action. If there are any questions, I'm happy to answer them. Otherwise, I'll stand on our brief. Thank you. Thank you. Thank you. Can I just start with the same question, if you don't mind? Sort of flipping the inverse of the last question. Given that you're now arguing that 1983 was clearly raised, clearly part of the arguments, clearly a basis of relief that you sought, why was it not more fully presented to the district court? Why was it not raised in post-judgment motions, motions for reconsideration, something? I'm curious. So, Your Honor, I do think the 1983 and the Gonzaga standard was raised repeatedly. I mean, the first, and just to sort of walk through the stages of this litigation, in our complaint, we referenced 1983 repeatedly. It's on page 2, paragraph 5 in the jurisdictional allegations. It's on page 1. It's in the cause of action. The parties then decided to proceed with cross motions for summary judgment. So the first time we had an opportunity to address substantively this private right of action issue, whether there's a right of action within the opposition to defending summary judgment motion. And at that point, it was raised and developed. I mean, on page 752 in the record, the statement of what the law is to bring a private suit under a federal statute. And a 1983 plaintiff must show that Congress intended to create a federal right. See Gonzaga. Once the plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable under 1983. See Gonzaga. Defendants can rebut the presumption by showing that Congress shut the door to private enforcement. Again, citing Gonzaga. Next page, 753, again referencing that shut-the-door language. And then on page 754, citing Schweier, plaintiffs couldn't enforce the provisions of the predecessor to 10101 under 1983. So I think we quote Schweier discussing 1983 and the availability of a 1983 remedy. So I think on this record, the availability of a remedy under 1983 and Gonzaga as a controlling test are more than well-developed enough to find there's no waiver. And I would just make one other point. If the court had any doubt on the waiver issue, and I don't think there's cause there to be doubt, first of all, we do win under that Sandoval analysis for all the reasons we discussed. And second of all, waiver is a discretionary matter, and this is the exact type of case where closely related legal issues, and that's the language from Tri-M Group against Sharp, a decision from this court in 2011, 638F3406, where this court said, it's a discretionary doctrine. Closely related issues are undisputedly not waived. The issues are legal. We should proceed to it. And I will say the Gonzaga framework, this is a 1983 case, and the Gonzaga framework is the clearest, cleanest, exceedingly simple way to resolve the private right of action issue under the Supreme Court's cases, including the unanimous decision in that Fitzgerald against Barnstable case, which again says, once we have that right, which is conceded, once we have a federal right, 1983 presumptively supplies the remedy, unless there's a more restrictive private remedy in the statute, and we don't have that here, just as was the case in Barnstable. One other point on the private right of action issue, just on a point that defendants raised, Congress in the legislative history actually does refer to the reason why it eliminated that administrative exhaustion requirement and says we're doing this to overrule several decisions imposing an administrative exhaustion requirement on private plaintiffs. So, again, I think there is indication of what Congress meant in addition to all of the statutory evidence in the legislative history. Just a couple quick points on the merits issues that were raised. You held up five fingers when you said a couple. I'll keep it to three. I'll bargain for three. Okay, all right. The defendant said the date is part of an attestation. Of course, here wrong dates are accepted. The date isn't relevant to the attestation. And we know, as the Attorney General's Office mentioned, 3553, the statute that imposes penalties for knowingly lying on this declaration, only refers to the signature. It doesn't refer to the date. It doesn't make the date necessary to anything. The second point of this two-factor authentication idea, that's contrary to the Secretary of State's guidance, which is the JA192, which says date is not used to determine timeliness and handwritten date is not used. Rather, it's the date that the board receives and stamps, and it's contrary to the statute. 3150, 16C, 3146, 6C, the ballot must be received by 8 p.m. on Election Day. There's no other factor. It's whether it was received 8 p.m. Election Day. The bottom line is, right or wrong, the date doesn't go to eligibility. It doesn't go to whether a voter possesses those characteristics set out in state law as making one eligible to vote. 18 by Election Day, citizen, resident of the county, not incarcerated in a felony. And this question about a hypothetical post hoc perjury prosecution is entirely different because it doesn't relate to whether one is eligible to vote. Everyone agrees if you leave the state and you're not a resident of the state on Election Day, you're not eligible to vote. That is the question the materiality provision asks. And here, handwriting a date on the envelope does not speak to any of those eligibility criteria. And this is the last of the three points. All the cases, look at Schweier, look at the 11th Circuit's decision in Browning, look at the Northern District of Georgia in Martin, look at the Western District of Arkansas in Thurston. When they do this merit analysis, they look to the provision in state law that sets forth the eligibility criteria to register to vote, just as we have done here and just as the Attorney General has pointed you to. That is the merits analysis. Now, conversely, defendant's position cannot be right. Qualified to vote cannot mean that you filled out every bit of paperwork required by the state in the election process. If it did, the materiality provision would be rendered nugatory. The entire point of the materiality provision. I understand that. Right, so if qualified to vote, if your qualification to vote means that you have filled out every bit of paperwork, you filled out that the date is somehow part of your qualification to vote, the materiality provision would never prevent voters from being disenfranchised for minor paperwork errors that don't bear on their eligibility. Eligibility has to mean those provisions that make you eligible to vote, not your compliance with minor paperwork requirements. And that's what we're talking about. I was thinking, this is covered by the instructions, but I'm sorry if I'm putting the emphasis on the wrong part of your name, but what if the instruction said you must complete the declaration in black ink and the person filling it out only has a blue pen. Well, it says black, but it's ink, so they fill it out in blue ink. Does that mean they're no longer eligible to vote? Your Honor, I think that's the exact type of disenfranchisement that Congress was trying to prevent because it understood that disenfranchising voters for trivial or arbitrary reasons that don't relate to their eligibility to vote means that you're disenfranchising valid voters, and there's a tremendous potential for abuse if disenfranchisement can happen on those grounds. In fact, that's what Congress was concerned about. And the bottom line is it produced this important prophylactic remedy that says that voters have a right to vote and can't be denied the right to vote based on minor paperwork errors. Now, these plaintiffs, and I'll conclude here unless the Court has further questions, these plaintiffs have been voting in Lehigh County for years, most of them for decades, some of them for over half a century, and they voted in this election, and their votes should be counted. Their right to vote should not be denied for what is a minor paperwork error, and this Court should reverse. Thank you. What we'd like to do is go to a number of students here, and we had agreed to have a session with them where we answer questions, obviously not dealing with this case, but just general kinds of questions. This case obviously has a great deal of timeliness to it. It's an emergency appeal. Having, in my past life, suffered through the returns, and I tell them, please watch me myself, I understand some of the anxiety that Mr. Ritter and Mr. Korn are probably enduring. This may not work. What I'd like to do is simply temporarily recess Court, let us confer in the voting room. We may or may not be able to reach agreement. If we can, we'll announce that from the bench with an order to follow hopefully later on today, giving you a little more substance to it, but perhaps we can at least let you know whether or not we're referring or reversing. So why don't we just temporarily recess? After we do that and come back, then we'll have our discussion with the students and the teachers. Thank you. Do you want to recess? Please rise. Court is now in session. Thank you. Thank you, everybody. We are continuing our discussions. We will have a definitive order resolving the case about the close of business on Friday. And I'll just leave it there. And I thank all counsel for a very helpful briefing and helpful argument against our ill, and we're waiting for the students to dismiss.